# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

SOFIA MARTINEZ (1),

Defendant.

CASE NO. 13CR3560-WQH

ORDER

HAYES, Judge:

The matters before the Court are:  1) the motion to suppress fruits of the wiretap, suppress cell site data, order a bill of particulars, and order a discovery cut-off (ECF No. 89) and 2) the motion to sever, suppress statements, and suppress fruits of tracker warrants (ECF No. 120) filed by Defendant Sofia Martinez.

**Background facts**

Homeland Security Investigation ("HSI") began investigating this case sometime in 2010 after receiving information from a source indicating that Defendant Sofia Martinez was involved in the smuggling of illegal aliens from Mexico into the United States.  Department of Homeland Security Special Agent Aaron Mulkins initiated an investigation which included interviewing individuals apprehended attempting to enter the United States illegally.  A number of individuals identified Defendant Martinez as involved in alien smuggling, including a material witness from a maritime smuggling event, the driver of a load vehicle, an individual involved in alien smuggling in east county, and an individual who identified Defendant's photos as the person involved in

the smuggling offense.[1]   The investigation continued through 2011 and 2012.

On March 12, 2013, the Government requested and received an order allowing interception of calls relating to T-1, which agents identified as a phone used by Defendant Martinez.  The affidavit in support of the wiretap application asserted that there was probable cause to believe that Defendant Martinez was using T-1 in connection with the commission of criminal activity, including transportation of illegal aliens, and bringing in illegal aliens for financial gain in violation of federal laws.

On April 16, 2013, the Government requested and received a second wiretap order for T-1 and two other phone lines.  The affidavit in support of the wiretap application asserted that there was probable cause to believe that Defendant Martinez was using T-1 in connection with the commission of criminal activity, including transportation of illegal aliens, bringing in illegal aliens for financial gain, and conspiracy to import controlled substances in violation of federal laws.

On May 10, 2013, a panga boat carrying illegal aliens arrived on the beach in La Jolla, California.  Agents apprehended fourteen individuals.  One individual was prosecuted in another case.  A material witness identified the boat driver as "Loreto."

On September 13, 2013, the United States submitted an "Application for Order Authorizing Disclosure of Subscriber and other Information" pursuant to 18 U.S.C. §2703(c) and (d) to the United States Magistrate Judge.  (ECF No. 193-1 at 3-7).  The application requested an order to Sprint Nextel, an electronic communications service provider, to disclose "subscriber and other information about a subscriber, including cell site location information from its historical databases" pertaining to an identified target telephone.  *Id.* at 4.  The Magistrate Judge found that the Government had set forth "specific and articulable facts showing that there are reasonable grounds to believe that the records and information sought are relevant to a criminal investigation" regarding a violation of 8 U.S.C. § 1324 by the subscriber or other users of the subject telephone.  The Magistrate Judge ordered that Nextel Sprint disclose subscriber

---

[1]Agent Mulkins testified at an evidentiary hearing on May 13, 2014.

1  information for the target telephone, including local and long distance connection

2  records, and cell site and cell sector activations by the subject telephone during the

3  period April 1, 2013 to and including September 9, 2013.  The facts described in

4  support of the application included the May 10, 2013 panga boat event which supported

5  the Government's belief that the Defendant was using the target telephone to participate

6  in criminal activity.

7  On September 25, 2013, the grand jury returned an indictment charging

8  Defendant Sofia Martinez with conspiracy to bring in illegal aliens for financial gain

9  in violation of 18 U.S.C. § 371.

10  On October 7, 2013, Defendant Martinez was stopped at the Otay Mesa Port of

11  Entry as she attempted to enter the United States.  Defendant Martinez was placed under

12  arrest pursuant to an arrest warrant.  Defendant Martinez was interviewed that same

13  day.  The interview was video-recorded.  The video shows that Defendant Martinez was

14  asked for biographical information, that Defendant was advised of her *Miranda* rights

15  in the English language, and that Defendant confirmed she understood her rights.

16  Defendant Martinez stated that she was willing to talk and confirmed with the agent that

17  she could stop answering questions at any time.

18  After Defendant Martinez signed the *Miranda* waiver form, the interview took

19  place in the English language with a few exchanges in the Spanish language.  The video

20  shows that Defendant Martinez appeared calm and readily responded to the questions

21  asked.  The interview ended after a short time when the Defendant indicated that she

22  no longer wanted to answer questions and that she wanted an attorney.

23  On October 30, 2013, the grand jury returned a superseding indictment charging

24  Defendant Sofia Martinez and Defendant Angel Arceo-Sevilla with conspiracy to bring

25  in illegal aliens for financial gain in violation of 18 U.S.C. § 371, and three counts of

26  bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii)

27  and 18 U.S.C. § 2.

28  On July 21, 2014, Defendant Arceo-Sevilla entered a plea of guilty to all four

charges in the superseding indictment.  Defendant Arceo-Sevilla admitted as a factual basis for his pleas of guilty that he agreed with Defendant Martinez and others to bring illegal aliens to the United States via the ocean for payment, including a May 9, 2013 panga boat landing in Mission Beach, California; and a May 10, 2013 panga boat landing in La Jolla, California.

On July 22, 2014, this Court entered an order denying the motion to suppress the wiretap evidence filed by Defendant Sofia Martinez.  (ECF No. 86).  The Court found in part that "each of the affidavits in support of the wiretap applications set forth facts sufficient to establish probable cause that the target telephone was used by Defendant Sofia Martinez to violate federal laws, specifically to illegally smuggle Mexican nationals or individuals from other countries into the United States and that communications about her criminal activity would be intercepted as a result of the wiretap." *Id.* at 11.

On or about July 29, 2014, Loreto Mesa-Villegas was apprehended on a jet ski after dropping off two illegal aliens near Silver Strand beach.  Agents subsequently identified him as the individual named "Loreto" who had driven the panga boat on May 10, 2013.

On August 6, 2014, the grand jury returned a second superseding indictment charging the Defendant Sofia Martinez and Defendant Loreto Mesa-Villegas with conspiracy to bring in illegal aliens for financial gain in violation of 18 U.S.C. § 371, and three counts of bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2.

On September 30, 2014, Defendant Mesa-Villegas entered a plea of guilty to all four  charges in the superseding indictment.  Defendant Mesa-Villegas admitted as a factual basis for his pleas of guilty that he agreed with Defendant Martinez and other to bring illegal aliens to the United States via the ocean for payment, including a May 9, 2013  panga boat landing in Mission Beach, California; and the May 10, 2013 panga boat landing in La Jolla, California.

1    Trial is scheduled to begin on November 4, 2014 for Defendant Martinez.

2    **Motion to suppress cell site data**

3    On September 13, 2013, the United States submitted an application to receive
4    "subscriber and other information about a subscriber, including cell site location
5    information from its historical databases" pertaining to an identified target telephone
6    from Sprint Nextel pursuant to 18 U.S.C. §2703(c) and (d) for the phone that the
7    Government believed Defendant used on May 9 and 10, 2013.  An order was signed by
8    the Magistrate Judge.   The Government intends to use the cell site data received from
9    Sprint Nextel as evidence at trial to show that Defendant was in the La Jolla, California
10   area at the time of the May 10, 2013 panga boat event.

11   Defendant moves the Court to suppress the cell site location data on the grounds
12   that the order obtained pursuant to 18 U.S.C. §2703 (c) and (d) violated her
13   constitutional rights.  Defendant contends that 18 U.S.C. §2703 (d) requires only
14   "reasonable grounds" to believe that the wire or electronic communication information
15   are relevant and material to an ongoing criminal investigation.  Defendant asserts that
16   recent opinions by the United States Supreme Court[2],  the Court of Appeals for the
17   Eleventh Circuit[3], and the Court of Appeals for the Third Circuit[4] require the conclusion
18   that seizure of historical cell site data based upon a showing of relevance violated her
19   Fourth Amendment rights.  Defendant asserts that seizure of this information required
20   a warrant based upon probable cause and that the information should be suppressed.

21   The Government contends that the records were obtained from Sprint Nextel
22   pursuant to a valid application and order under 18 U.S.C. §2703 (c) and (d).   The
23   Government contends that the records were generated by Sprint Nextel, stored on Sprint

---

25   [2]*United States v. Jones*, 565 U.S._, 132 S.Ct. 945 (2012) and *Riley v. California*,
26   573 U.S. _, 134 S.Ct. 2473 (2014)

27   [3]*United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014), rehearing en banc
     granted opinion vacated 2014 WL 4358411 (September 4, 2014)

28   [4] *In re Application of U.S. for an Order Directing a Provider of elec. Commc'n
     Serv. To Disclose Records to Gov't*, 620 F.3d 304, 317-18 (3rd Cir. 2010).

Nextel premises, and subject to Sprint Nextel control.  The Government asserts that Defendant has no Fourth Amendment claim to prohibit the production of business records held by third parties.  The Government asserts that the recent Supreme Court cases relied upon by the Defendant have no relevance to business records obtained from third parties.

The Stored Communications Act ("the Act"), Pub. L. No. 99-508, 100 Stat. 1848 (1986) (codified as amended at 18 U.S.C. §§ 2701-2711 (2010)), is directed in part to the disclosure of communication information by providers of electronic communications. Section 2703(c) of the Act applies to "[r]ecords concerning electronic communication service" and states in relevant part: "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity ... obtains a court order for such disclosure under subsection (d) of this section." 18 U.S.C. § 2703(c)(1)(B).

Section 2703(d) provides:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

18 U.S.C. § 2703(d).

Historical cell site location data is a "record or other information pertaining to a subscriber to ... or customer of such service" and falls within the scope of § 2703(c)(1). *See In re Application of the United States*, 620 F.3d 304, 313 (3d Cir. 2010) (holding that historical cell site location information is "obtainable under a § 2703(d) order"); *see also United States v. Steve Ruby,* 12CR1073 WQH  (ECF No. 125 at 5-9, February 12, 2013);  *In re Application of the United States for an Order: (1) Authorizing the Installation & Use of a Pen Register & Trap & Trace Device, & (2) Authorizing Release of Subscriber & Other Info.,* 622 F.Supp. 2d 411, 418 (S.D. Tex. 2007); *and*

1  *In re Applications of the United States for Orders Pursuant to Title 18, U.S.C. §*
2  *2703(d),* 509 F.Supp. 2d 76, 82 (D. Mass. 2007).

3       The information obtained  from the provider pursuant to 18 U.S.C. §2703 (d) in
4  this case is limited to historical cell site data and does not involve any real time tracking
5  information[5] or the content of any communication.  Based upon United States Supreme
6  Court rulings in *United States v. Jones* and *Riley v. California,* Defendant challenges
7  the seizure of this historical cell site data under 18 U.S.C. §2703 (c) and (d) without a
8  warrant which requires probable cause.

9       In *United States v. Jones,* the United States Supreme Court concluded that the
10 warrantless attachment of a Global-Positioning-System tracking device to an
11 individual's vehicle and subsequent use of that device to monitor the vehicle's
12 movements on a public street violated the Fourth Amendment.  The Supreme Court
13 concluded that the physical intrusion involved in the attaching the Global-Positioning-
14 System tracking device to the individual's vehicle constituted a search within the
15 meaning of the Fourth Amendment.  132 S.Ct. at 949.  The Supreme Court rejected the
16 Government's argument that Jones had no reasonable expectation of privacy in the area
17 of the vehicle accessed by the Government agents.

18      In *Riley v. California*, the United States Supreme Court found that the search
19 incident to arrest exception to the warrant requirement did not extend to a search of
20 digital information on a cell phone seized from an individual who had been arrested.
21 The Supreme Court concluded that "a warrant is generally required before [] a [cell
22 phone] search, even when a cell phone is seized incident to arrest."  134 S.Ct. at 2493.

23      These recent Supreme Court cases examined the application of Fourth
24 Amendment protections to the warrantless attachment of a tracking device on a vehicle
25 and the application of Fourth Amendment protections to a cell phone seizure and
26 search.  This Court concludes that these cases do not provide any authority relevant to

27 _____

28      [5]The real time tracking information utilized in this case was obtained with a
warrant stating probable cause.

1   invalidate the authorization of Congress under § 2703(d) to obtain records concerning

2   electronic communication from a provider of electronic communication service.  The

3   seizure of historical cell site location information under Section 2703(d) does not

4   involve the physical intrusion upon Defendant's property or any real time tracking

5   information. This case does not involve the search or seizure of a cell phone, the search

6   or seizure of the content of any communication or the search and seizure of any

7   information of the Defendant subject to a reasonable expectation of privacy.

8        In *Smith v. Maryland*, 442 U.S. 735 (1979), the Supreme Court concluded that

9   a pen register installed on telephone company property to record the telephone numbers

10  dialed by the petitioner did not constitute a search within the meaning of the Fourth

11  Amendment.   The Supreme Court concluded that the petitioner did not have a

12  "reasonable expectation of privacy" regarding the number dialed on his phone.  The

13  Supreme Court stated: "we doubt that people in general entertain any actual expectation

14  of privacy in the numbers they dial." *Id*. at 742.  The Supreme Court added: "[E]ven if

15  petitioner did harbor some subjective expectation that the phone numbers he dialed

16  would remain private, this expectation is not 'one that society is prepared to recognize

17  as 'reasonable.'" (citation omitted).  *Id*. at 743.  The Supreme Court concluded: "This

18  Court has consistently held that a person has no legitimate expectation of privacy in

19  information he voluntarily turns over to third parties."  *Id*. at 743-44.   The Court

20  concluded:

21          This analysis dictates that petitioner can claim no legitimate expectation
            of privacy here.  When he used his phone, petitioner voluntarily conveyed
22          numerical information to the telephone company and 'exposed' that
            information to its equipment in the ordinary course of business.  In so
23          doing, petitioner assumed the risk that the company would reveal to police
            the numbers he dialed.
24
    442 U.S. at 744.
25
26       In this case, the information provided by Sprint Nextel was "subscriber and other

27  information about a subscriber, including cell site location information from its

28  historical databases." (ECF No. 193-1 at 4).  The records are the business records of

Sprint Nextel and not entitled to protection under the Fourth Amendment. The third party cellular phone provider created and maintained records. The Court concludes that the Defendant does not have a reasonable expectation of privacy in the third party business records created and maintained by a cellular phone provider derived from information voluntarily conveyed to the cellular telephone provider. Defendant "exposed that information to its equipment in the ordinary course of business." *Smith v. Maryland*, 442 U.S. at 744.

When Martinez used her cell phone, she voluntarily conveyed numerical information to the telephone company and exposed that information to the cell phone towers in the ordinary course of business. Congress has authorized such records to be provided to law enforcement from the provider of electronic communication services when the Magistrate Judge finds "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Those requirements were met in this case. The Court concludes that the Defendant's Fourth Amendment rights were not violated when the Government obtained historical cell site data pursuant to 18 U.S.C. § 2703(d). Defendant's motion to suppress the cell site data is denied.

**Motion to suppress fruits of the wiretap**

Defendant moves the Court to suppress the results of the wiretaps in this case due to flagrant and pervasive failure to minimize the recordings as required under Title III and the Fourth Amendment. Defendant asserts that the sheer number of calls compared to the number of minimized calls shows that minimization was woefully lacking. Defendant contends that a small percentage of calls deemed non-pertinent were minimized and the investigators failed to minimize calls which did not involve Defendant at all. Defendant contends that the investigators acted unreasonably and in direct contravention of 18 U.S.C. § 2185(5). In addition, Defendant Martinez contends that the investigators failed to minimize the calls of her co-defendant Arceo's phone

1  line.

2      The Government asserts that it has shown a prima facie case of compliance with

3  the minimization requirement. The Government asserts that the record establishes that

4  proper  procedures were established and followed, that monitors were provided with

5  adequate instruction and training, and that sufficient supervision of monitors was

6  provided at all times.

7      18 U.S.C. Section 2518(5) requires that the Government conduct wire intercepts

8  so as to "minimize the interception of communications not otherwise subject to

9  interception." 18 U.S.C. § 2518(5). The Government has the burden to show proper

10 minimization. *United States v. Torres,* 908 F.2d 1417, 1423 (9th Cir. 1990). In *Torres*,

11 the Court of Appeals explained:

> Minimization requires that the government adopt reasonable measures to
> reduce the interception of conversations unrelated to the criminal activity
> under investigation to a practical minimum while permitting the
> government to pursue legitimate investigation.  The standard for
> minimization is reasonableness.

15 *Id.* (citations omitted). "The mere interception of calls unrelated to the drug conspiracy

16 does not indicate a failure to meet the minimization requirement." *Id.*

17     In this case, the Government submits the affidavit of Homeland Security

18 Investigations Special Agent Thomas Haid.  The special agent was one of the

19 supervising agents during the wiretaps related to the investigation in this case.  The

20 Agents states the following facts from his personal experience and information:

> Prior to the monitoring in this case, an Assistant United States Attorney
> provided training to the agents involved in investigation and monitors
> regarding minimization. Each monitor was required to attend this training
> session, or review the training materials containing all the instructions
> covered in the live training.  During the training session, the AUSA
> instructed us on a variety of topics relating to conducting an effective
> wiretap, including how to handle privileged communications and the
> importance of minimization.
>
> Each monitor was required to sign an acknowledgment proclaiming that
> he/she read and was familiar with the (i) written instructions from the
> Assistant United States Attorney, (ii) the Affidavit I made in support of the
> wiretap application, and (iii) the Court's order authorizing the interception
> of wire communications.  The written instructions provided detailed
> guidance on minimization and were posted in the monitoring room.

Throughout the duration of the wiretaps in this case, a supervising agent or officer was assigned to the wiretap room during the monitoring periods. In addition, should the need have arisen, the contact information for the Assistant United States Attorney assigned to this case was available in the wiretap room. The AUSAs assigned to the case were available to the agents on a twenty-four hour basis.

The monitoring of the communications in this case was difficult for a number of reasons. First, the interceptees discussed a variety of criminal activities, including drug trafficking and alien smuggling. Second, the group involved in the illegal activity was large, with some people known and many others unknown to the monitors and investigating agents. Third, the interceptees spoke in coded language for the vast majority of their conversations when discussing illegal activity, making it difficult for the monitors to determine the true topic of discussion. Fourth, the interceptees frequently did not identify themselves or used nicknames, sometimes making it difficult to identity (sic) of the speakers. Fifth, the interceptees frequently changed from legitimate to illegitimate topics during the same conversation.

(ECF No. 123 at 2-3).

The Court finds that the Government has met its burden to demonstrate that the monitoring agents were instructed on the requirements for minimization and required to read the minimization guidelines, that supervising agents were present in the wire room during the interceptions, and that an Assistant United States Attorney was on call to answer questions relating to minimization. The record demonstrates that the minimization efforts were reasonable and in accordance with 18 U.S.C. § 2518(5).

In this case, approximately ninety percent of calls to T-1 and seventy-five percent of calls to T-3 were under two minutes. Conversations utilized code language as well as the Spanish language. The conspiracy under investigation involved a number of individuals, a number of phones, and two countries. One of the purposes of the wiretaps was to identify the members of the conspiracy. The Court concludes that the monitors took reasonable steps to assess the relevancy of each call and to minimize calls that were not related to criminal activity. The interception of calls not related to the drug conspiracy does not, by itself, indicate a failure to meet the minimization requirement. *See Scott v. United States*, 436 U.S. 128, 140-41 (1978)("[T]he statute does not forbid the interception of all non-relevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception

of such conversations."); s*ee also United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000). ("[I]f phone conversations include guarded or coded language..., a higher rate of non relevant intercepted calls should be expected because it takes longer to figure out the meaning of a particular call.").

The procedures, training and supervision were adequate. Defendant does not challenge the introduction of specific conversations into evidence on the grounds that the monitors should have minimized specific conversations, and the record shows a prima facie case of compliance with the minimization requirements.

Defendant's motion to suppress fruits of the wiretap is denied.

**Motion for bill of particulars**

Defendant moves the Court to order the government to "specify those [smuggling] events covered by the charged conspiracy which it will seek to prove at trial." (ECF No. 89 at 25). The Government states that it has provided "defense counsel a list of maritime smuggling events, which it may present at trial." (ECF No. 122 at 18).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the court may "direct the filing of a bill of particulars." Fed. R. Crim. P. 7(f). "To the extent that the indictment or information itself provides details of the alleged offense, a bill of particulars is [] unnecessary." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (internal citation omitted). Full discovery obviates the need for a bill of particulars. *Id.* The Court finds the information provided is sufficient to identify the smuggling events relevant to the trial.

The motion for bill of particulars is denied.

**Motion for discovery cut-off order**

The motion for a discovery cut-off is denied without prejudice to renew as to any specific discovery dispute.

**Motion to sever**

Defendant Mesa-Villegas has entered a plea of guilty.  Defendant's motion to sever is denied.

**Motion to suppress statements**

Defendant moves the Court to suppress statements made in her post-arrest interview.  Defendant asserts that the Government bears the burden to prove that her statements were taken subsequent to an adequate *Miranda* advisement and that her statements were voluntary.  Defendant asserts that an evidentiary hearing is necessary. Defendant further contends that the Government should be precluded from using the "biographical" questions asked regarding her phone numbers.  Defendant asserts that this questioning was pre-*Miranda* and the agents had to know that her phone numbers could be incriminating.

The Government submits the video of the Defendant's interview and asserts that an evidentiary hearing is not required in this case.  The Government states that it has not used any of Defendant's responses to the booking questions to investigate this case and that it does not intend to use any of the biographical questions and answers in its case in chief.

The video shows Defendant's interview began on October 7, 2013 at 2:43 p.m. The agent began by asking biographical questions until 2:58 p.m.  The agent asked the Defendant questions about her current and past phone numbers.  At 2:59 p.m., the agent informs Defendant of her *Miranda* rights in the English language.  Defendant confirms that she understands and that she is willing to answer questions.  Defendant confirms aloud that she can stop at any time and agent confirms.  Defendant reads the *Miranda* waiver aloud and signs the *Miranda* waiver form.

From 3:02 p.m. until 3:14 p.m., the agents asks Defendant questions and the agent tells the Defendant what he knows from his investigation.  At 3:14 p.m., Defendant says she does not want to answer any more questions.  Defendant then talks with the other agent in Spanish for approximately a minute and the interview ends.

"For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Garibay,* 143 F.3d 534, 536 (9th Cir. 1998) (internal quotation omitted). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. " *Moran v. Burdine*, 475 U.S. 412, 421 (1986) (internal quotation omitted).

There is a presumption against waiver which the Government bears the burden of overcoming by a preponderance of evidence. *Garibay,* 143 F.3d at 536. The validity of a waiver depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the defendant. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981). "Several factors to consider are (i) defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system." *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007).

In this case, Defendant was advised of her *Miranda* rights, Defendant stated that she understood her rights, and Defendant signed the *Miranda* waiver form. The interview took place in the English language with a few exchanges in the Spanish language. The video shows that Defendant Martinez appears on the video to be calm and readily responded to the questions asked. There is no indication that the agents pressured her or that she was under duress. The questioning ended twelve minutes after the *Miranda* advisal, after Defendant indicated that she no longer wanted to answer questions and that she wanted an attorney.

The Court finds that the video demonstrates by a preponderance of the evidence that Defendant's waiver of Miranda rights was voluntary, knowing, and intelligent.

1  The totality of the circumstances in this case show an uncoerced choice to answer

2  questions.  Defendant indicated that she no longer wanted to answer questions and

3  questioning stopped.   Defendant's motion to suppress statements is denied.

4  **Motion to suppress fruits of tracker warrants**

5  Defendant asserts that all GPS and cell site location data derived from the tracker

6  warrants in this case should be suppress on the grounds that the magistrate judges did

7  not have a basis for concluding that the affidavits established probable cause.

8  Defendant asserts that the information in the affidavit in support of the initial

9  application for a tracking device warrant failed to establish probable cause specific to

10 a particular person, that is, to Defendant Martinez.  Defendant further asserts that the

11 three subsequent applications contained dated, stale information incriminating her

12 losing force when viewed against the recent non-incriminating information.

13 The Government contends that the applications in support of the four tracker

14 warrants provided detailed information establishing probable cause to believe that

15 Defendant Martinez was using the cellular phones in furtherance of alien smuggling and

16 that real time tracking of the cellular telephone with phone number 619-571-6630

17 would lead to evidence of the crime.

18 In *Crews,* the Court of Appeals for the Ninth Circuit explained:

19 A magistrate judge's finding of probable cause is entitled to great
   deference and this court will not find a search warrant invalid if the
20 magistrate judge had a 'substantial basis' for concluding that the
   supporting affidavit established probable cause." *United States v. Clark*,
21 31 F.3d 831, 834 (9th Cir.1994), cert. denied, 513 U.S. 1119, 115 S.Ct.
   920, 130 L.Ed.2d 800 (1995). Furthermore, "[i]n borderline cases,
22 preference will be accorded to warrants and to the decision of the
   magistrate issuing it." *United States v. Terry*, 911 F.2d 272, 275 (9th
23 Cir.1990) (citation omitted).

24 502 F.3d at 1135.   "Probable cause exists when, under the totality of the circumstances

25 known to the arresting officers, a prudent person would have concluded that there was

26 a fair probability that [the defendant] had committed a crime." *United States v. Garza*,

27 980 F.2d 546, 550 (9th Cir.1992) (alteration in original) (citation and quotation marks

28 omitted). "Probable cause means only a 'fair probability,' not certainty, and requires

consideration of the totality of the circumstances." *United States v. Garcia-Villalba,* 585 F.3d 1223, 1233 (9th Cir. 2009) (citation omitted).  The decision is made by the issuing court on the basis of practical, common-sense considerations and overturned only if lacking a "substantial basis." *Illinois v. Gates*, 462 U.S. 213, 238 (1983)

In this case, the Government applied for and received four warrants authorizing the seizure of location data from cell phone 619-571-6630 believed to be used by Defendant Martinez.  The Government made application for a tracking device warrant and received an order for each application on the following dates: 1) October 19, 2012 (ECF No. 120-3 at 1-11); 2) November 30, 2012  (ECF No. 120-4 at 1-11); 3) January 22, 2013 (ECF No. 120-5 at 1-12); and 4) March 8, 2013 (ECF No. 120-6 at 1-15).

These warrants authorized the seizure of cell site information and real time tracking and geo-location (GPS) for the cellular telephone.  The cell site information reveals the cell tower which transmitted a particular call from the cell phone.  The GPS tracking information is information obtained through a smart phone's internal GPS device and tracks the location of the cell phone in real time by accessing the GPS device on the phone.  The initial application was presented to the United States Magistrate Judge on October 19, 2012.  The Special Agent of Homeland Security Investigations investigating the smuggling of aliens into the United States, the transporting and harboring of aliens within the United States, and the utilization of documents by aliens to illegally enter or remain in the United States requested the disclosure of cell site information and GPS information for a cellular telephone 619-571-6630 believed to be used by Sophia Martinez.  The agent informed the Magistrate Judge that the disclosure of the information would establish the approximate location of the cellular telephone.

The agent informed the Magistrate Judge that he believed that Martinez and co-conspirators were engaged in a criminal conspiracy to transport aliens in violation of immigration laws.  The agent detailed specific information supporting probable cause to believe that Defendant Martinez was engaging in alien smuggling activity, including

13CR3560-WQH

a source of information identifying the Defendant as an alien smuggler, and statements by two alien smugglers detailing work with the Defendant as an alien smuggler. The agent detailed specific information linking Defendant's cell phone to a specific alien smuggling event on February 20, 2012, and provided information from a wiretap in an unrelated case in which Defendant was intercepted discussing alien smuggling. The facts provided to the Magistrate Judge in the initial tracker application on October 19, 2012 provided a substantial basis to support the finding that there was probable cause to believe that the real-time tracking and geo-location information for the subject telephone would lead directly to evidence of criminal activity.

The Court has examined the affidavits in support of the November 30, 2012 tracker warrant, the January 22, 2013 tracker warrant, and the March 8, 2013 tracker warrant. Each affidavit sets forth specific facts to support the Magistrate Judge's conclusion that there was probable cause to believe that the real-time tracking and geo-location information for the subject telephone would lead directly to evidence of criminal activity. Each affidavit adds recent information to the prior affidavit further connecting the Defendant to alien smuggling and demonstrating that the subject telephone was utilized in the criminal activity. The facts detailed in each affidavit relate to events early in the investigation as well as recent events in the investigation. Each affidavit provides a sufficient basis to believe that the subject telephone were currently being used for criminal activity. *See United States v. Bowman*, 215 F.3d 951, 964 (9th Cir. 2000) ("A search warrant is not stale where there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.").

Defendant's motion to suppress the fruits of tracker warrants is denied.

/ / /

13CR3560-WQH

1    **Conclusion**

2        IT IS HEREBY ORDERED that 1) the motion to suppress fruits of the wiretap,

3    suppress cell site data, order a bill of particulars, and order a discovery cut off (ECF No.

4    89) is denied and 2) the motion to sever, suppress statements, and suppress fruits of

5    tracker warrants (ECF No. 120) is denied.

6    DATED:  October 28, 2014

7                                                 *William Q. Hayes*

8                                    **WILLIAM Q. HAYES**
                                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28